UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KURT A. MOROZKO,<br><br>     Plaintiff,<br><br> v.<br><br>SHOSHONE COUNTY and CITY OF OSBURN,<br><br>     Defendants. | Case No. 1:19-cv-00512-BLW<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Kurt A. Morozko's initial Complaint as a result of Plaintiff's status as an inmate. Plaintiff has since filed an Amended Complaint, as the Court instructed. *See* Dkt. 3, 7.

The Court now reviews the Amended Complaint to determine whether it should be summarily dismissed in whole or in part under 28 U.S.C. § 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order directing Plaintiff to file a second amended complaint if he intends to proceed.

**1. Screening Requirement**

The Court must review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, as well as complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or

seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.

§§ 1915(e)(2)(B) & 1915A(b).

## 2.	Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim

for relief under Rule 8 if the factual assertions in the complaint, taken as true, are

insufficient for the reviewing court plausibly "to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not

require detailed factual allegations, ... it demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts

pleaded are "merely consistent with a defendant's liability," or if there is an "obvious

alternative explanation" that would not result in liability, the complaint has not stated a

claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks

omitted).

## 3.	Factual Allegations

Plaintiff is a prisoner in the custody of the Idaho Department of Correction,

currently incarcerated at the Idaho State Correctional Center. It appears that the events

giving rise to Plaintiff's claims occurred while Plaintiff was residing in Shoshone

County.

In December 2017, deputies with the Shoshone County Sheriff's Office "gained entrance" to Plaintiff's private property, allegedly by trespassing "through a locked gate." *Am. Compl.*, Dkt. 7, at 2. The deputies then allegedly placed cameras on Plaintiff's property to film him and also filmed him with their bodycams. *Id*. at 3. Later, the deputies allegedly "knowingly and maliciously procured search warrants by falsifying documents and creating 'false events.'" *Id*. at 4.

Plaintiff was later pulled over by the Sheriff of Shoshone County and arrested for failure to use his turn signal. Plaintiff states that he was held in the Shoshone County Jail in solitary confinement "for more than 24 hours" before charges were filed and he was booked into the jail. He contends the cell in which he was placed was a "dry cell" or "strip cell," with "no running water and a hole in the floor for a toilet." *Id*. A camera was pointed toward Plaintiff's cell. He alleges that, at some point, he collapsed and was taken to the hospital.

When Plaintiff was arrested, officers with the City of Osburn Police Department impounded and performed an inventory search of Plaintiff car, though Plaintiff claims they "did not have the legal authority" to do so. *Id*. at 5. Plaintiff later determined that some cash was missing from the car. *Id*. at 8.

Officers from the Shoshone County Sheriff's Office and the City of Osburn Police Department searched Plaintiff's home. Plaintiff complains that, even though the officers had Plaintiff's keys and could have unlocked the door, they forced their way into the home instead. *Id*. at 6–7. Plaintiff states that "[n]o reason, other than that it was 'defacto

policy,' was given as to why law enforcement chose to damage the home to gain entry when these same seized keys were used to gain entry to other areas of the home." *Id*. at 7.

When the officers left Plaintiff's home, they "taped" the door shut, even though they knew that Plaintiff had reported break-ins previously and that there were valuables in the home. *Id*. at 6–7. Plaintiff states that, as a result, an unknown person stole nearly $300 in cash and $200,000 worth of gold from Plaintiff's home. *Id*. at 7–8.

The officers seized firearms, either from the car or from the home. *Id*. They also seized a scale and white powder from Plaintiff's home. Officers claimed that the scale contained narcotics, even though the substance had "tested presumptive negative." *Id*. at 6. Some of the seized items were not returned to Plaintiff.

It appears that Plaintiff was charged in Shoshone County Court with two counts of possession of a controlled substance, three counts of unlawful discharge of a weapon, and one count of malicious injury to property. *See State v. Morozko*, Shoshone County Case No. CR-2018-51, https://icourt.idaho.gov/. Plaintiff complains that he was not given a probable cause hearing before his arrest and detention. *Am. Compl.* at 8–9.

Plaintiff's preliminary hearing was postponed, allegedly because the prosecutor, in a tactical attempt to delay the proceedings, filed an unwarranted motion to determine Plaintiff's competency. The proceedings were "suspended," but Plaintiff did not receive a competency evaluation. *Id*. at 9.

While Plaintiff remained in the Shoshone County Jail, deputies allegedly "knowingly gave the Plaintiff … medications of Clonidine and Dicyclomine, which are

prescription psychotropic medications." *Id*. at 9. Plaintiff claims that the medications were not prescribed for him and that he thought they were meant to treat his upset stomach. Plaintiff states that the deputies gave him these medications to make him "appear confused" at his scheduled meeting with the Department of Health and Welfare. *Id*. at 9–10.

The proceedings against Plaintiff were postponed again, which allegedly resulted in his being left in the Shoshone County Jail for several months. Plaintiff states he was then "remanded to the State of Idaho Department of Health and Welfare," even though no competency evaluation had been filed with the court. *Id*. at 10.

This resulted in what the Plaintiff described as a "forced incarceration at the State Hospital North, a psychiatric hospital, with a diagnosis of 'cocaine use as per police reports.'" *Id*. at 11. Plaintiff states he was held there for a month "against his will and subjected to forcible medication of Haliperiodol [sic], a powerful anti-psychotic, which [was] narrowly averted by staff." *Id*.

Plaintiff alleges the possession charges against Plaintiff were later dropped after the forensic lab reported that the substance found in Plaintiff's home was not a controlled substance.

Plaintiff was returned to the Shoshone County Jail and had a preliminary hearing on July 9, 2018, more than the six months after his arrest, in violation of Idaho Code § 19-3501(1). At the hearing, Deputy Lee allegedly "gave inconsistent and knowingly false statements and testimony while under oath." *Id*. at 12. This deputy also allegedly

improperly removed evidence from the evidence room and tampered with that evidence, and that this removal was caused by "a lack of oversight." *Id*. at 13.

Plaintiff was later convicted of the remaining charges against him and sentenced to a term of incarceration. *See State v. Morozko*, Shoshone County Case No. CR-2018-51, https://icourt.idaho.gov/.

Plaintiff sues Shoshone County and the City of Osburn, alleging violations of both federal and state law.

**4.      Section 1983 Claims**

Plaintiff has not alleged sufficient facts to proceed with the Amended Complaint. The Court will, however, grant Plaintiff 28 days to file a second amended complaint. Any such complaint should take into consideration the following.

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Governmental officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional

violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) "set[] in motion a series of acts by others"; (2) "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failed to act or improperly acted in the training, supervision, or control of his subordinates"; (4) "acquiesc[ed] in the constitutional deprivation"; or (5) engag[ed] in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205–09.

To bring a § 1983 claim against a local governmental entity—such as Shoshone County or the City of Osburn—a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978). Under *Monell*, the requisite elements of a § 1983 claim against a local

governmental entity are the following: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). Further, a local governmental entity "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

A claim that a supervisor or training official failed to adequately train subordinates ordinarily requires that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [supervisor or training

official] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). That is, to maintain a failure-to-train claim, a plaintiff must allege facts showing a "pattern of violations" that amounts to deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 72 (2011).

Likewise, "a failure to supervise that is sufficiently inadequate may amount to deliberate indifference" that supports a § 1983 claim, but there generally must be a pattern of violations sufficient to render the need for further supervision obvious. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks omitted). That is, if a supervisory or training official had "knowledge of the unconstitutional conditions" through such a pattern of violations—including knowledge of the "culpable actions of his subordinates"—yet failed to act to remedy those conditions, that official can be said to have acquiesced "in the unconstitutional conduct of his subordinates" such that a causal connection between the supervisor and the constitutional violation is plausible. *Starr*, 652 F.3d at 1208.

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

Plaintiff brings his § 1983 claims under the Second, Fourth, and Fourteenth Amendments.[1]

### A. *The Amended Complaint Does Not State a Plausible* **Monell** *Claim*

The Amended Complaint does not plausibly allege that any challenged action was taken pursuant to a policy or custom of Shoshone County or the City of Osburn. *See Monell*, 436 U.S. at 691–94. Though Plaintiff appears to claim that *somebody* from the Shoshone County Sheriff's Office or the City of Osburn Police Department stated that entering his home without using Plaintiff's key was "defacto policy," Plaintiff provides no other allegations about the surrounding circumstances. Where did this conversation take place, and when? Who said this statement? How many officers executed the search of Plaintiff's home? Where was Plaintiff at the time, and were officers in a position to observe Plaintiff and ensure their safety while, at the same time, fiddling with a set of keys? There is simply not enough information in the Amended Complaint to state a plausible *Monell* claim against either Defendant.

---

[1] Plaintiff also cites the Fifth and Eighth Amendments, but neither amendment applies to Plaintiff's claims in this case.

The Fifth Amendment guarantees the right to a grand jury in federal criminal cases, the right not to be subject to double jeopardy, the right to be free from compelled self-incrimination, the right to due process as against the federal government, and the right to compensation from the taking of private property for public use. None of these rights appear to be implicated the Plaintiff's allegations in the Amended Complaint.

The Eighth Amendment prohibits cruel and unusual punishment, but it applies only to convicted prisoners—not free citizens or pretrial detainees. Because Plaintiff was not a convicted prisoner at the time of the events giving rise to Plaintiff's claims, his conditions of confinement claims will be analyzed under the Due Process Clause of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 537 n. 16 (1979).

**B.    Other Deficiencies in the Amended Complaint**

Plaintiff's Amended Complaint suffers from problems other than a failure to meet the *Monell* standard. Thus, the Court provides the following guidelines and legal standards to aid Plaintiff in drafting a second amended complaint.

i.        Second Amendment Claims

The Second Amendment to the United States Constitution protects an individual's "right to keep and bear arms for the purpose of self-defense." *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010). But that right is not unlimited.

For example, the Second Amendment permits "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *District of Columbia v. Heller*, 554 U.S. 570, 626–27 (2008); *see also United States v. Vongxay*, 594 F.3d 1111, 1115–18 (9th Cir. 2010). Also, the amendment does not prohibit the lawful seizure of firearms as potential evidence of a crime. *See Kortlander v. Cornell*, 816 F. Supp. 2d 982, 993 (D. Mont. 2011). Because § 1983 does not provide a remedy for mere negligence, if an officer subjectively—even if mistakenly—believed that the seizure of a firearm was lawful, a plaintiff cannot maintain a Second Amendment claim.

ii.       Fourth Amendment Claims

Plaintiff asserts claims of false arrest and of illegal search and seizure of property. The Fourth Amendment protects against unreasonable searches and seizures. It "requires, as a general matter, that police procure a warrant before searching or seizing property."

*United States v. Ewing*, 638 F.3d 1226, 1231 (9th Cir. 2011). "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (footnote omitted).

Search warrants may be issued only upon a showing of probable cause. U.S. Const., amend. IV. Warrantless searches and seizures inside a home are presumptively unreasonable, but there are exceptions to this warrant requirement. For example, "law enforcement officers may make a warrantless entry onto private property to fight a fire and investigate its cause, to prevent the imminent destruction of evidence, or to engage in hot pursuit of a fleeing suspect." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (internal quotation marks and citations omitted). A warrant is not required for an officer to enter a home to assist persons who are seriously injured or threatened with such injury," *id.*, and "police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains evidence of a crime, and the vehicle is readily mobile," *Ewing*, 638 F.3d at 1231 (internal quotation marks omitted).

Additionally, under the "community caretaking" exception to the warrant requirement, "police may, without a warrant, impound and search a motor vehicle … in furtherance of a community caretaking purpose, such as promoting public safety or the efficient flow of traffic." *United States v. Torres*, 828 F.3d 1113, 1118 (9th Cir. 2016). However, because "an inventory search must not be a ruse for a general rummaging in

order to discover incriminating evidence," *Florida v. Wells*, 495 U.S. 1, 4 (1990), police conducting such a search must follow "the standardized procedures of the local police department," *Torres*, 828 F.3d at 1118.

The Fourth Amendment also generally "prohibits government officials from detaining a person in the absence of probable cause." *Manuel v. City of Joliet*, 137 S. Ct. 911, 918–19 (2017); *see also Michigan v. Summers*, 452 U.S. 692, 700 (1981) ("[T]he general rule [is] that every arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause."). Probable cause exists where the "facts and circumstances [are] sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975).

Where an arrest is made pursuant to a warrant, the arrest violates the Fourth Amendment if "a reasonably well-trained officer in [defendant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley v. Briggs*, 475 U.S. 335, 345 (1986). If a warrant application contains allegedly false statements, a plaintiff may state a colorable § 1983 claim if the officer who made the statements in the warrant did so either (1) knowingly and intentionally, or (2) with reckless disregard for the truth. *Franks v. Delaware*, 438 U.S. 154, 155 (1978). The plaintiff must also plausibly allege that the false statements were "material, or necessary, to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000) (internal citation and punctuation omitted).

In screening a complaint under 28 U.S.C. §§ 1915 and 1915A, a court is not required to accept as true a complaint's legal conclusions. *Iqbal*, 556 U.S. at 678. Therefore, merely alleging that a search or arrest was made without probable cause does not suffice to state a plausible Fourth Amendment claim. Further, because there are exceptions to the warrant requirement, a plaintiff must allege more than simply a warrantless search or arrest.

### iii.    Due Process Claims

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A person cannot obtain relief on a due process claim unless he demonstrates that he was deprived of one of these protected interests. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 459–60 (1989).

Liberty interests "may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,'" or they may be created by state law. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). For a state law to create a protected liberty interest, the law "must contain: (1) substantive predicates governing official decisionmaking, and (2) explicitly mandatory language specifying the outcome that must be reached if the substantive predicates have been met." *Bonin v. Calderon*, 59 F.3d 815, 842 (9th Cir. 1995) (internal quotation marks omitted).

Property interests are not created by the Constitution. *Nunez v. City of Los Angeles*, 147 F.3d 867, 872 (9th Cir. 1998). Instead, they are created "by existing rules or understandings that stem from an independent source such as state law.'" *Bd. of Regents*

*v. Roth*, 408 U.S. 564, 577 (1972)).

If a plaintiff shows that he was deprived of a protectable liberty or property interest, then a court must consider the process to which the plaintiff was entitled. This determination must be made on a case-by-case basis. *Wolff v. McDonnell*, 418 U.S. 539, 560 (1974) ("Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.") (internal quotation marks and alteration omitted).

The "essence of due process" is notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). The specific process to which a person is entitled depends on the consideration of three factors: (1) "the private interest ... affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used[] and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

a)      *Deprivation of Liberty*

Plaintiff challenges his detention at various times before and during the pendency of the criminal case against him. Though false arrest claims are analyzed under the Fourth Amendment, a false imprisonment claim arises under the Due Process Clause if a detention occurs as the result of a false arrest. *See Baker v. McCollan*, 443 U.S. 137, 142 (1979). A plaintiff asserting false imprisonment must meet the elements of common law

false imprisonment[2] and establish that the detention resulted in a violation of due process rights under the Fourteenth Amendment. *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996). The plaintiff also must show that the persons detaining him were involved in or aware of the wrongful nature of the arrest. *Id.* at 1526–27. A "false imprisonment ends once the victim becomes held pursuant to [legal] process—when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace v. Kato*, 549 U.S. 384, 389 (2007).

### b) Deprivation of Property

Plaintiff claims that the officers' decision to force their way into Plaintiff's home damaged his door, and that taping his door shut resulted in unknown third parties stealing money and property from Plaintiff's home. Plaintiff also asserts that some of the property that was seized from his home and car has not yet been returned.

As previously explained, a negligent act of a governmental official does not give rise to a due process claim. Moreover, even an official's *intentional* deprivation of property will not support a due process claim under § 1983 if the plaintiff has an adequate post-deprivation remedy under state law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

Idaho has adopted the Idaho Tort Claims Act ("ITCA"), Idaho Code § 6-901, *et seq.*, to provide a remedy for citizens injured by the tortious acts of governmental entities, officials, and employees. As a general rule, "every governmental entity is subject to liability for money damages arising out of its negligent or otherwise wrongful acts or

---

[2] The elements of common law false imprisonment in Idaho are (1) restraint of the physical liberty of another (2) without legal justification. *Clark v. Alloway*, 170 P.2d 425, 428 (Idaho 1946).

omissions and those of its employees acting within the course and scope of their employment or duties." Idaho Code § 6-903(1). One exception to this rule is that "any law enforcement officer," acting "without malice or criminal intent and without gross negligence or reckless, willful and wanton conduct," is not liable for a claim that "[a]rises out of the detention of any goods or merchandise." Idaho Code § 6-904B(1). Importantly, this exception does not immunize officials from liability for acts that are grossly negligent, reckless, or willful and wanton.

Further, Idaho law provides a specific remedy for those seeking the return of property that was seized as potential evidence of a crime. Idaho Criminal Rule 41(e) provides that any "person aggrieved by a search and seizure may move the [Idaho state] district court for the return of the property on the ground that the person is entitled to lawful possession of the property and that it was illegally seized." If criminal proceedings arose from the search or seizure, a Rule 41(e) motion may be filed only in those proceedings. If, however, no criminal charges were filed, the person may institute "a civil proceeding … in the county where the property is seized or located." *Id.*; *see also State v. Meier*, 233 P.3d 160, 161 (Idaho Ct. App. 2010) (holding that the burden of proof initially lies with the party seeking return of the property, but "shifts to the state once the evidence is no longer needed for evidentiary purposes").

Accordingly, to the extent Plaintiff is claiming that the officers negligently acted in a way that damaged or deprived Plaintiff of his property, he has no due process claim regardless of the existence of a state law remedy for negligent conduct. To the extent

Plaintiff claims that the officers recklessly or intentionally damaged or deprived him of his property, he had a potential remedy under state law. Therefore, Plaintiff should omit such claims from any second amended complaint.

c)      <em>Conditions of Jail Cell</em>

Plaintiff complains of the conditions of his cell in the Shoshone County Jail. The Due Process Clause applies to pretrial detainees and is violated when the conditions to which the detainee is subjected amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Those conditions, such as official actions resulting in the failure to protect an inmate or in the provision of inadequate medical treatment to an inmate, are deemed to constitute punishment if a plaintiff satisfies the following elements:

(1)      The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;

(2)      Those conditions put the plaintiff at substantial risk of suffering serious harm;

(3)      The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and

(4)      By not taking such measures, the defendant caused the plaintiff's injuries.

*Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016), *cert. denied sub nom. Los Angeles Cty., Cal. v. Castro*, 137 S. Ct. 831 (2017) (analyzing failure-to-protect claims of pretrial detainees); *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018) (applying *Castro* to medical-treatment claims of pretrial detainees). "With respect

to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Castro*, 833 F.3d at 1071.

The Ninth Circuit has referred to this due process standard as "objective deliberate indifference." *Gordon*, 888 F.3d at 1124, 1125. Although this is an objective standard, it must not be confused with the objective standard used for evaluating claims of negligence under state law. Negligence—the "mere lack of due care" by a governmental official—"does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id.* at 1071; *see also Daniels*, 474 U.S. at 332 (1986). Therefore, a pretrial detainee complaining of unconstitutional conditions of confinement must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Castro*, 833 F.3d at 1071.

### d) Forced Medication

An inmate has "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Washington v. Harper*, 494 U.S. 210, 221-22 (1990). Because the "extent of [the inmate's] right under the Clause to avoid the unwanted administration of antipsychotic drugs must be defined in the context of the inmate's confinement," *id.* at 222, involuntary medication does not violate the Due Process Clause so long as it is "'reasonably related to legitimate penological interests.'" *Id.* at 223 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987). Therefore, "the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his

will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* at 227.

However, adequate procedural protections must be in place to justify the involuntary administration of psychotropic drugs. The determination of whether procedural protections are adequate must be made on a case-by-case basis. *Wolff*, 418 U.S. at 560 ("Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.") (internal quotation marks and alteration omitted). In *Harper*, the Court held that a state policy providing for "notice, the right to be present at an adversary hearing, and the right to present and cross-examine witnesses" comports with due process. 494 U.S. at 235.

     iv.       <u>Issues as to Claims Related to Plaintiff's Criminal Convictions</u>

Plaintiff also alleges that prosecutors made certain litigation decisions for the purpose of delaying the proceedings, that unknown individuals withheld exculpatory evidence, tampered with evidence, and manufactured evidence. With respect to the charges that were not dismissed and upon which Plaintiff was convicted, these claims may be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).[3]

---

[3] Any claims related to the dismissed charges would not be barred by *Heck*. Therefore, Plaintiff must include, in any second amended complaint, detailed allegations as to which particular actions were taken with respect to the dismissed charges versus the charges of conviction.

In *Heck*, the United States Supreme Court held that a civil rights claim "is not cognizable under § 1983" if the plaintiff's success would "render a conviction or sentence invalid." *Id*. at 486-87. Thus, if a favorable verdict in a civil rights action "would necessarily imply the invalidity" of the plaintiff's conviction, the plaintiff must first show that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 487. As the Supreme Court later clarified, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

Further, the Supreme Court has made it clear that when a state prisoner seeks "a determination that he is entitled to immediate release or a speedier release from ... imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Accordingly, release from incarceration is not an available remedy in a § 1983 action.

If Plaintiff files a second amended complaint, he should set forth how the alleged constitutional violations relate to his current incarceration. If Plaintiff believes that his

claims, if successful, would *not* imply the invalidity of his convictions, he must set forth

detailed allegations regarding that conviction and explain his position.

Certain claims regarding Plaintiff's criminal convictions may also be barred by the

doctrines of witness immunity or prosecutorial. Witnesses are "absolutely immune from

liability for testimony" during a court proceeding; this immunity "extends to preparatory

activities 'inextricably tied' to testimony." *Lisker v. City of Los Angeles*, 780 F.3d 1237,

1241 (9th Cir. 2015).

In addition, prosecutors have absolute immunity for actions taken in the

performance of an integral part of the criminal judicial process. *Imbler v. Pachtman*, 424

U.S. 409, 430 (1976). These actions include initiating and pursuing a criminal

prosecution, *id.* at 410, preparing and filing charging documents, *Kalina v. Fletcher*, 522

U.S. 118, 129 (1997), participating in hearings, and "making false or defamatory

statements in judicial proceedings," *Burns v. Reed*, 500 U.S. 478, 490 (1991).

Prosecutors are not absolutely immune if they conduct their own investigations, if

they fabricate evidence, or if they elicit known false evidence for use in a prosecution.

*See Milstein v. Cooley*, 257 F.3d 1004, 1011 (9th Cir. 2001). However, absolute

prosecutorial immunity does extend to "the knowing use of false testimony at trial, the

suppression of exculpatory evidence, and malicious prosecution." *Id.* at 1008; *see Broam

v. Bogan*, 320 F.3d 1023, 1029-30 (9th Cir. 2003). In the event a prosecutor is not entitled

to absolute immunity, the prosecutor may still be entitled to qualified immunity, which

insulates all governmental actors from liability for money damages other than "the

plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation marks omitted).

### C.    *State Law Claims*

In addition to § 1983 claims, Plaintiff asserts state law claims under Idaho Code §§ 18-211, 18-212, 18-2901, 19-805, 19-212, and 19-3501. Title 18 is Idaho's criminal code, while Title 19 is Idaho's code of criminal procedure.

Plaintiff's state law claims are implausible because these statutes do not create a private right of action. The Idaho Supreme Court has explained the analysis a court must undertake to determine whether a private cause of action exists:

> When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.

*Yoakum v. Hartford Fire Ins. Co.*, 923 P.2d 416, 421 (Idaho 1996) (emphasis omitted) (relying on Restatement (Second) of Torts § 874A).

The Idaho Supreme Court held in *Yoakum* that there was no private right of action under certain Idaho criminal statutes. The court relied on the following factors: the statutes were intended to protect the general public, the statutes provided for a criminal punishment, and there was no indication (1) that the legislature intended to create a private cause of action, or (2) that providing an additional civil remedy was necessary to assure the effectiveness of the statutes. *Id.*

Similar reasoning exists here with respect to the state statutes cited in the Amended Complaint. As in *Yoakum*, there is no indication that the Idaho Legislature intended to create a private right of action under those statutes or that an additional civil is necessary to ensure the statutes' effectiveness. Because Idaho has not created a private right of action under any of those statutes, Plaintiff should omit such claims from any second amended complaint.

## 5. Standards for Second Amended Complaint

If Plaintiff chooses to further amend the complaint, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks and alteration omitted)).

Rather, for each cause of action against each defendant, Plaintiff must state the following: (1) the name of the person or entity that caused the alleged deprivation of Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as

state employment or a state contract) or a private entity performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular federal constitutional provision (or state law provision) Plaintiff alleges has been violated; (6) facts alleging that the elements of the violation are met; (7) the injury or damages Plaintiff personally suffered; and (8) the particular type of relief Plaintiff is seeking from each defendant.

Further, any second amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Plaintiff must set forth each different factual allegation in a separate numbered paragraph. The second amended complaint must be legibly written or typed in its

entirely, and it should be clearly designated as the "Second Amended Complaint."
Plaintiff's name and address should be clearly printed at the top left corner of the first
page of each document filed with the Court.

If Plaintiff files a second amended complaint, Plaintiff must also file a "Motion to
Review the Second Amended Complaint." If Plaintiff does not amend within 28 days, or
if the amendment does not comply with Rule 8, this case may be dismissed without
further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a
litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of
the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a
claim.").

## ORDER

**IT IS ORDERED:**

1.    Plaintiff has 28 days within which to file a second amended complaint as
      described above. If Plaintiff does so, Plaintiff must file (along with the
      second amended complaint) a Motion to Review the Second Amended
      Complaint.

2.    If Plaintiff does not amend within 28 days, this case may be dismissed, with
      prejudice, without further notice.

DATED: March 31, 2020

_____

B. Lynn Winmill
U.S. District Court Judge